Good morning, Your Honors. May it please the Court, Andrew Parnes on behalf of the appellant David Prince. Your Honor, this case was tried solely on one defense, and that was a good-faith belief in what Mr. Prince had told the investors. I'd like to address three of the issues in the briefs and rely on the briefs on the other matters. The first is the issue of the cease-and-desist order that was issued by the Texas Security Board. In this case, the order was not properly admitted for use of Mr. Prince's intent. It was an order from the agency in Texas telling the jury that these actions by Mr. Prince were wrong. No, that's not what the order said. The order was redacted so that only the printed material at the bottom, which recited the Texas Code regarding manipulative devices and what should not be done, it was simply a recitation. What the jury saw was simply a recitation of the Texas statutes. Well, it didn't say anything about what Mr. Prince had done. Mr. Isles testified to what Mr. Prince admitted to him on the telephone he had done to wit, place a false advertisement in the Wall Street Journal regarding 4.75 percent per month over 8 or 9 months, which was false. Now, with that background, what's your point? Well, the point is that the cease-and-desist order says, and what was part of it that was part of it, was that you should cease and desist from making the misleading – making misleading statements. From making any misleading statements. Right. It doesn't say you have made misleading statements. It says you should cease and desist from making any misleading statements. And the prosecution in closing argued that this, in the rebuttal argument, Mr. Fazioli said basically that the Texas Security Board, they believed that what he was doing was wrong, that what Mr. Prince was doing was wrong. But the instructions that Judge Breyer gave said the jury was not to consider the Texas information for the purpose of showing a Texas violation, which would be as irrelevant as if it were a violation of the securities law of San Bueno. So that was taken care of by the instruction. Well, the instruction was lengthy. And when I look at that instruction, it is – it is, I think, unclear as to how limited it should be and whether it goes to the order or simply to the – some of the statements that were made. And I think there's a difference between the statements that Mr. Prince made and the admission of the cease-and-desist order itself. There's no question about that. I mean, certainly Mr. Prince makes statements, and those are statements that are admitted. The issue is whether the order that comes in that says you are to cease and desist from this very action. This is not a case like the other cases where there are prior acts, where there are prior attempts to get Mr. Prince to stop doing what he's doing as in other cases. You told us your defense was purely good – good faith. You weren't trying to say the acts were themselves lawful. So how is it a statement or an inference that the Texas board concluded the activities were not lawful? That really doesn't speak to your defense. You weren't contesting that. Well, it goes to – it goes to that issue because basically the – the inference, I think, from the security – the Texas board is that there was no good faith. That this – since this was illegal. Well, at least from that point on, there was no good faith, because your clients on notice that at least the Texas board thinks it's unlawful, so his good faith, naive, I didn't realize defense isn't going to be very successful after that. Well, but the problem is, is that it's not limited to, and it wasn't limited just to the time period after that. That's at the very end. Well, the case wasn't, but the limiting instruction said it has to do with the state of mind at that time. Now, it may be that at that time was after most of the offenses for which he was convicted. But there was at least one transaction that took place later, wasn't there? There was one transaction on May 26th, which is right in that period of time that is actually between the time of the original order and the time of the final cease and desist order. But that transaction, that Mr. Perrini had no contact with Mr. Prince between the period of time when Mr. Prince first received the cease and desist order in May 22nd. The evidence is that he didn't talk with him. He had made a prior loan to the company. He made a prior investment in the company and sent another check without talking with anybody after that. So I think that it is a situation. It's also, it is also unlike other cases where this is a finding where the jury is told that the Texas board has essentially found this action, this very action wrong, not that he did something prior two years before. Let me address the immunity matter quickly. In this case, the state government says basically the evidence in their brief, the evidence showed that Dr. Lee never spoke with any of the victims in the case. He never appeared on any of the bank or trade accounts. He never told the investors where, how to wire money. He was basically not involved in the government's view. The question becomes why in this particular situation did they not grant immunity to a witness who they believe doesn't have any relationship to the case. And I've set forth in the brief the argument. Those two statements aren't necessarily the same thing. I mean, he could have no contact with the customers and still be heavily involved in the case.  I mean, it's an obvious conspiracy possibility if he in fact knew what was going on. So I'm not sure why you're suggesting that immunity is a cost-free proposition for the government. Well, a couple of things. Number one, they never, they barred from the grand jury. They never prosecuted him. At this trial, they said. They never prosecuted me either. They never gave me immunity. I mean, they don't hand out immunity very much. And the fact that maybe it doesn't cost them anything, I mean, that's not the standard anyway. No, but then they're not required to grant immunity. But then the court has to look at that. The judge, district judge, should have looked at the reasons for not granting immunity to this witness in this particular case. Usually the requirement to grant immunity, which is rare, is triggered by some other witness. And there is another witness who was granted immunity here, but that witness wasn't called by the government. So why is it the government's obligated to grant immunity to somebody else? Well, in, when Mr. Ellsworth was, was, when the issue of immunity came up, it was in a pretrial situation where Mr. Ellsworth was going to be called as a prosecution witness. There was no question about that at that time. The decision not to call him was made mid-trial. So at the time that the district court was handling the immunity issues, had they had a hearing, had they brought Mr. Lee forward? Well, Mark Twain once said something like, I've had many terrible things happen in my life, most of which never actually happened. And it may have been that if Mr. Ellsworth had been called by the government, there would have been such an imbalance that the government could have been and should have been compelled to grant immunity to somebody else. But he wasn't called by the government. And is there any case that says when the witness granted immunity hasn't been called by the government, the government's still obligated to give immunity to somebody else just because the defense files say? No, I cite the court to no case that. But the government didn't stop and say, well, we're not going to question Mr. Ellsworth. They brought out in tremendous detail a lot of information in their cross-examination of Mr. Ellsworth. And I think at that point, the immunity issue arises again. If you're going to find him a damaging witness, then maybe you don't call him in the first place. That's possible. I wasn't trial attorney at that time. And don't fault anybody. I mean, you play the cards you're dealt. That's just how it is. And finally, let me, in the time remaining, I would like to save some time for rebuttal. Let me address the sentencing issue. In this case, Judge Breyer found that there was no basis to increase the sentence within the guideline range because of Mr. Prince's fact that he is an attorney or was an attorney in the case, at the time of the case. However, what the Court found was that he deserved a more severe sentence than the Hartland of cases solely because he was an attorney. That what the judge said, and it's cited in the briefs, is that this, what takes this case out of the Hartland is the fact that he was an attorney. Most of these cases are, you know, run-of-the-mill cases do not involve lawyers. Simply based on the fact that Mr. Prince was a lawyer, not the fact that he had used the fact that he was a lawyer to advance the crime, should require that the matter be remanded for sentencing, if it's not reversed, based solely on the issue of whether that variance is proper. He was imposed the guideline range was 57 to 71 months, and an 84-month sentence was imposed, and I think that is directly based on the fact that Mr. Prince is an attorney. But not only was he an attorney, but he told the investors he was an attorney, and that played a role in the investors entrusting what he called loans, but what were really equities. But Judge Breyer made a finding that when he looked at the question of whether his role as an attorney advanced the crime under the guidelines, he found that that was not – it was possible that that played a role, but it wasn't a significant enough role to give the two-level increase, and therefore he said, I'm not going to do that, but on the other hand, I'm going to do a variance. Well, he was pretty explicit in what he was doing. I mean, he identified this as a factor and said, I won't do it here, but I'll do it here. If we send it back, suppose he does it over here, is it wrong for him to identify that as a factor? Absolutely. At this point, I think he's made a finding that this is not a factor, and therefore it shouldn't be done. And so I think that he's bound by that, and it would be – I don't think he would do that. Suppose he had done that in the first instance. How good an argument would your client have that he couldn't count that against him as a breach of trust? Well, I think that based on the facts that were before the court and what was argued to the court, that judge's decision was right. I'm not here looking at a hypothetical of what – had he done that. I think there was some information about that, but certainly not enough that he used his role as an attorney to advance the crime. I respectfully request rebuttal of the remaining time. That's fine. Thank you. We'll hear from the government. May it please the Court. My name is Ann Voights, and I represent the United States in this case. This Court should affirm defendant's convictions and sentence because, first, with respect to the TSSB evidence, that evidence was relevant, and it was not substantially more prejudicial than probative. Is it relevant to whether he's violating the Federal Securities Act, that he's worried – that he's warned that he's violating the Texas Security Act? It's relevant because it shows the defendant was on notice. A notice of violating the Texas Security Act. Is there any evidence from Mr. Isles that he told Mr. Prince that he was also violating the Federal Securities Act? No, there's not, but there is evidence. It's a different statute. It's a different – for all we know, in Texas, it's a violation of the Texas Securities Act not to root for the Rangers. That may be. Well, I have to – under Texas Security Act, don't you have to register to sell anyone, you know, sell your stock or whatever you're selling to any Texas resident? You do have to register, but part of the – And if you don't register, don't you get one of these things? Yes, but – Does it tell you that you can't commit false and fraudulent acts? I don't know if it also says you – Was there really a form that sent out by Texas and every other State to – did anyone bother to look? I don't believe that was in the record. What was in the record was that – Did anyone bother to look anyway? No, but what the TSSB order asked him to do was not to engage in making false statements, and it was focused on the same statements that he made to the investors in this case, the team representatives. It was on the same stage, on the same exact things. Did they have a hearing? You have the defendant's statements. You have the testimony of Travis Isle saying that he reviewed the ad that was placed in the Wall Street Journal, the ad that the defendant admitted that he placed. But in that ad, the ad said that the principle was guaranteed, there was a certain rate of return. And you have the testimony of the victim investors saying that they had been made the same promises, both on the website where the content was controlled by the defendant. This was all before the Texas State Board? No. What you had before the Texas State Board was the Wall Street Journal article. You had the defendant's statements to Travis Isles in which he claimed that they could make – that they could show – But that's it, right? That's correct. And then defendant chose not to oppose that. He said, I can show that we have records that show for the past eight months we've had profits, when in fact the past six months had been catastrophic, as defendant knew, for the Leopard Fund. They had lost almost all of their funds. But the Texas State people didn't know anything about the catastrophic losses. They did not. They asked defendant for the records. Defendant said that he would provide them, but ultimately dropped his opposition. But then they didn't find it, did they? They did not. But as the Court said, when it allowed this very heavily redacted order to come in, it gave limiting instructions, both when the order first came in, in the final jury instructions, and again in rebuttal. And I'd like to address, if I could, one point that defense counsel made. Government counsel in rebuttal did not say that the TSSB had made a factual finding of fraud. What it said was that this went to defendant's notice, and the Court again reminded the jury what they were to consider this for. Notice of what? That's my problem. Notice of what? That it goes to notice that making statements, specifically statements about this entity. Violates the Texas Security Act. But that these any – is there any way that we can say that that is notice that he's also violating the SEC Act? No, but I think to the extent that – What's the relevance? The relevance, again, goes to the fact that defendant was making false statements. He was put on notice that he should not make those statements, and yet he continued to do so. By his own admission, in his testimony at trial, he said, I told the TSSB that I would – that I took the principal guarantee – Basically, aren't you using this as actually just straight-out other crimes? He was a bad man kind of thing? No. This was very much about his – he said at trial, he admitted that he continued to tell investors, even after he agreed to the TSSB order, he continued to tell investors that their principal was guaranteed. In fact, although there was one charge of transaction that occurred after, there were also testimony of two other investors who made deposits after that time, both Senator Covington and Sullivan. Third, whether this amounts to an abuse of discretion, we'd submit it clearly does not. The order came in. Is it your position that if he was telling false statements and admitted that much under the Texas Security Act, the false statements were also false statements under the Federal Act? Yes. They were the same statements. Well, what was he convicted of? In this case, he was convicted of wire fraud. Wire fraud. Of making false and fraudulent statements. And the order specifically told him. So was it tied in particular to the Securities Exchange Act or anything like that or simply wire fraud? It was wire fraud. And he was told in this case, the cease and desist order as it came in specifically told him not to make a statement that was materially misleading or otherwise likely to deceive the public, that he would cease and desist from engaging in any fraud, and yet he continued. That's what the Federal statute says, and he's charged with knowledge of it. And as he admitted at trial, that's what he did. He continued to make the same representations. What he did was he ceased to make them on his website where the TSSB regulators could verify what he was saying. He continued to make those statements to investors. Did he continue to take out advertisements in the Wall Street Journal? He did not. Essentially what he did once the TSSB entered this order was he took steps to hide his actions from the scrutiny of regulators, and that was consistent with the other evidence at trial, that what he did when an investor threatened to go to the authorities, that investor would get paid back as opposed to other investors. If I might also address the issue of the immunity question, with respect to the government's position, it has not been the government's position that Lance Lee had no connection to the case, but the fact that he may have been connected to the Leopard Fund in no way exculpated defendant. In this case, the question is not whether the government had a valid reason not to give Mr. Lee immunity. The question is did it amount to a due process violation where here the government didn't even call Matthew Ellsworth as a witness, and his testimony, in fact, was not directly contradictory of the attorney proffer as to what Mr. Lee would say. And for that reason, there was no error in the district court's decision. If I might address also one issue with respect to sentencing, the district court based its ruling on the section 3553A factors on two things. First, the fact that the victims here were, in his view, particularly sympathetic, particularly unsophisticated. And on defendants, the fact the defendant was an attorney. And there was ample evidence in the record that defendant took advantage of the fact that he was an attorney. And, in fact, there was testimony by one investor, Mr. Sullivan, which appears at SER 1598, saying, defendant, I asked him, is the fund legal? He's a lawyer. He told me it was legal and above board. You had other investors saying, I went to the State Bar website. I looked it up. He's an attorney in good status. That gave me faith. That made me think that I could rely on this. Accordingly, there was no abuse of discretion in this case for the district court to enhance defendant's sentence. If the Court has no further questions, I'd like to simply return to one point about the TSSB statement. I think if you break it out between the order and defendant's statements, there's really no issue that defendant's statements to Travis Isles should and did come in. And even with respect to the order, it is not an abuse of discretion for an order that was redacted to take out all of the factual findings, all of the legal conclusions, and that came in for purposes of notice. It's not a hard inference. I mean, in the same way I said before, I haven't committed any crimes. Government hasn't charged me with crimes, but they haven't granted me immunity either. It's probably not a hard inference for someone to look at this and say, hmm, they don't send this out to just anybody. They must think this guy's doing some bad stuff and needs to be put on notice and told you can't do bad stuff, again. Well, I think that's why it's relevant to look, again, to the limiting instructions. And here, was it an abuse of discretion? The district court told them three times, don't worry about it. The only purpose that you should consider this for is what this says about what defendant was thinking and what was in his state of mind. And under this Court's case law, we presume that the juries follow those instructions. And this relates in particular to the final order? I mean, there was a period of time. What was the – let me just put it this way. What do you think is probative about this in connection with the convictions you obtained? I think what is probative is that it shows that defendant continued to make the same representations. Even after he'd been challenged, even after he'd been asked to produce records, he doesn't produce them. In order to make the scrutiny go away, he says, I won't oppose this order. And he takes the language off of his website. And that's like saying that he didn't oppose the finding of guilt. But what he said was, I went ahead and I still said these things to the investors. I still made the same promises that were the subject of my discussions with the TSSB that were part of my agreement that I would no longer make. I continued to say that the principle was guaranteed. And that was something that those individuals continued to rely on. Looking back, do you think it was important that you get that particular piece of evidence in? I think even if the admission was error, it was harmless error in this case, because the testimony of the victim and vassal is. Let me ask you that question. Why don't you answer the question I asked. Do you remember it? I think it was probative. I think it was potentially cumulative. Looking back, would you have, again, put that piece of evidence in? Yes. I think it was significant because it went to notice. Was it? But even if it was deemed to be error, we would submit it was harmless, because the evidence that came in from the financial records, defendant's own admissions on cross-examination, that he was using the investor's money to pay back investors, and in some cases using an investor's own principle to pay him what were purportedly interest payments. The fact that he had the testimony of the victim investors, the testimony of the expert witness, as the district court said, the jury, when considering the challenge to Dr. Lee, the jury could reasonably find there was no way defendant believed the subsequent representations he made to the victims about the trader, about the health of the funds, in light of his law degree and practice, his own contacts with the traders, his experience trading his own money, his regular review of the Ameritrade account statements. There was evidence in the record as well that defendant had taken an options course. He understood that this was risky, and yet he presented it to remarkably unsophisticated investors as if it had no risk. And accordingly, we'd submit, if the Court has no further questions, we'd simply ask the Court to affirm defendant's convictions and his sentence. Thank you. Thank you. We'll hear rebuttal. In regard to the notice issue, it's not the theory that the government used at trial, it's not what they were advised of. Just what it went to was the State, allegedly went to his state of mind, didn't go to he's on notice, anything like that. Wasn't state of mind affected by notice? If you're told don't do this, and you continue to do it, isn't there a state of mind inference to be drawn from that? Well, two things. In the Bailey case that was decided last year, the argument of state of mind and, in a sense, notice was related to a prior allegation of the same conduct, and this Court found that that should not have been admitted because it wasn't, there wasn't proof of it, there wasn't allegations concerning of it, and it wasn't really going to state of mind. In this case, the notice comes at the tail end of this leopard fund and where the alleged wire frauds are. And in this case, the front end of the two counts that occurred in October and December of 2005, there was not a jury decision on that. They were hung and they were eventually dismissed. So going back and having come in before the jury a finding by, or what I believe an inference of a finding that there was wrongdoing on Mr. Prince's part from the cease and desist order, why would they have him stop doing something? Why would they just send it out? Don't do these things, that the jury was affected by that. And so I think that it lacks relevance on notice. It lacks relevance on intent, the order itself. And it is a basically looked at as a government order. And the limiting instructions really go to Travis Isle's testimony rather than the order itself. It's really confusing, I believe, to the jury. Let me address one issue on immunity, and that is what Dr. Lee, what the proffer was and what Dr. Lee could have testified to. In that, in this situation, Mr. Prince testified that Dr. Lee was the one who had the connection with the trader, Billy Troy. He's the one who had that connection, told him about his past. Mr. Troy's past to trading and his success. All of those things are critical to the good faith belief, that he's not just making – that Mr. Prince is not just making this up. And the evidence to dispute that? That about Dr. Lee? Right. I mean, was that a contested issue? It was – well, it was a contested issue in the sense that he should not have believed that. And it was all – but I think that if Dr. Lee had testified and Mr. Troy was – had split the country, he was unavailable. So it would be important for Dr. Lee, who has a number of degrees, who is a respected member of the community, to come in and testify, yes, I told Mr. Prince these – this information. And that supports the defense of his reliance on that. I'm prepared to submit it. Thank you. Roberts. Thank you. Thank both counsel for your helpful arguments. The case disargued is submitted.
judges: Duffy, Clifton, Bea